UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 08-11672-RGS

|                                |   |
|--------------------------------|---|
| MARK O'BRIEN                   ) |
|     Plaintiff | ) |
|                                ) |
| Vs.                            ) |
|                                ) |
| RICHARD ROBBINS                ) |
|     Defendant | ) |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendant, Richard Robbins ("Lt. Robbins"), moves for summary judgment in his favor on the grounds that the plaintiff, Sgt. Mark O'Brien ("plaintiff"), cannot adduce evidence to establish the elements of a First Amendment or any other legal claim. Accordingly, Lt. Robbins is entitled to judgment in his favor as a matter of law.[1]

**I.  INTRODUCTION**

The plaintiff's First Amendment claim fails because he did not speak as a citizen about a matter of public concern. In April 2006, the Clerk for the Town of Reading, Massachusetts ("Town Clerk"), made a complaint about the plaintiff, a sergeant in the Reading Police Department, to the Reading Police Chief, James Cormier ("Chief"). The Town Clerk complained that the plaintiff was not available during an election poll detail, and she requested that he not be assigned

---
[1] Lt. Robbins hereby incorporates his Local Rule 56.1 Statement Of Undisputed Material Facts And Supporting Exhibits In Support Of Defendant Richard Robbins's Motion For Summary Judgment.

to work that detail anymore.  When the Chief notified the plaintiff about the Town Clerk's complaint, the plaintiff responded by informing the Chief that the Town Clerk was having an inappropriate romantic relationship with Lt. Robbins, and that the time she spent visiting the lieutenant at the station made his working environment uncomfortable.  In addition, the plaintiff told the Chief that the complaint was really by Lt. Robbins, who has taken every opportunity to "take a shot" at the plaintiff since an incident in 1993.  When reporting the relationship, the plaintiff made it clear that he wanted the situation kept between himself and the Chief, in his words "in-house."

The plaintiff now claims that due to his disclosure about the relationship to the Chief, Lt. Robbins retaliated against him in violation of his First Amendment rights.  The plaintiff's comments to the Chief, however, were clearly intended to redress personal grievances and should, therefore, not be given First Amendment protection.  Furthermore, even if Lt. Robbins had treated the plaintiff differently from members of the general public, he had an adequate justification for doing so.  Finally, the plaintiff cannot show that his alleged protected speech was a substantial or motivating factor in any adverse employment decision.  Accordingly, the Court should dismiss the plaintiff's complaint and award summary judgment in favor of Lt. Robbins.

II.     **LEGAL STANDARDS**

    A.     **Summary Judgment**

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in their favor, no genuine issue of material fact remains.  See Fed.R.Civ.P. 56(c); Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st

Cir.1994). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Grant's Dairy-Maine, LLC v. Comm'r of Maine Dept. of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir.2000).

### B.  Argument

In the context of First Amendment retaliation claims, Federal Courts have adhered to a straightforward test to determine whether a public employee's speech receives protection.  Applying the test to the facts of this case makes it clear that the plaintiff's speech falls outside the scope of First Amendment protection.  In order to prove an actionable First Amendment claim, the plaintiff must show: (1) that their expression was made as a citizen and involved matters of public concern; (2) that the employee and the public's interest in commenting on the matter outweighed the Department's interest in maintaining workplace efficiency; and (3) that the "protected speech" was a substantial or motivating factor in an adverse employment action.  Jordan v. Carter, 494 F. Supp. 2d 72, 75 (D.Mass. 2007); accord Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir.2008).

#### 1.  **Plaintiff's First Amendment claim fails because he did not speak as a citizen addressing matters of public concern.**

The plaintiff's speech is not protected because he did not speak as a citizen about a matter of public concern.  The First Amendment protects a public employee's right to speak as a citizen when addressing matters of public concern. See Garcetti v. Ceballos, 547 U.S. 410, 417 (2006); see also Curran v. Cousins, 509 F.3d 36, 44 (1st Cir.2007).  Under Garcetti, the first step is to ask "whether the

3

employee spoke as a citizen on a matter of public concern." <u>Garcetti</u>, 547 U.S. at 418. As the First Circuit instructs, "this first step itself has two sub-parts: (a) that the employee spoke as a citizen and (b) that the speech was on a matter of public concern." <u>Curran</u>, 509 F.3d at 45 (citing <u>Garcetti</u>, 547 U.S. at 418). If either of these two sub-parts is answered in the negative, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." <u>Garcetti</u>, 547 U.S. at 418. Both prongs of the analysis are decided by the Court as a matter of law. <u>Curran</u>, 509 F.3d at 45.

          **a.**        **<u>The plaintiff was not speaking as a citizen.</u>**

The plaintiff was not speaking as a citizen but only responding to the Town Clerk's complaint made about him. The inquiry into whether a public employee spoke as a citizen or pursuant to his or her job duties is "a practical one." <u>Garcetti</u>, 547 U.S. at 424. See <u>Davis v. McKinney</u>, 518 F.3d 304, 313 (5th Cir.2008) (surveying post- Garcetti caselaw and concluding that complaints raised up the chain of command in a public workplace are often viewed as being pursuant to one's job duties while "external communications" in which a public employee raises concerns to persons outside the workplace are "ordinarily not made as an employee, but as a citizen").

Here, the plaintiff was not speaking as a citizen but merely defending himself from a complaint and complaining to the Chief about his working conditions. The plaintiff informed the Chief about a romantic relationship between the Town Clerk and Lt. Robbins because the Town Clerk had complained to the Chief about the plaintiff's performance at the election detail on April 4, 2006. See <u>Exhibit B</u>. The plaintiff disclosed the relationship to defend himself against the Town Clerk's allegations. See <u>Exhibit C</u>, Answer No. 6;

4

Exhibit D, p. 50.

Moreover, the plaintiff did not make statements to the press or at a public hearing, but instead told the Chief that he wanted to keep things "in house," and from "one cop to another". See Exhibit B; Exhibit D, p. 21, 54, 57-58. Indeed, the plaintiff made every effort to keep all correspondence only between himself and the Chief so that the Chief could resolve the matter internally. The plaintiff did not want the situation to go outside the police station. See Exhibit B; Exhibit D, p. 54, 57-58. According to the plaintiff, he informed the Chief about the relationship in confidence so that the Chief could decide what to do with his own police personnel. See Exhibit D, p. 28, 54, 57-58, 216-217. The plaintiff did not want to expose this relationship to the public. See Exhibit D, p. 216-218.

Finally, the plaintiff was not speaking as a citizen because, as a sergeant and supervisor in the Reading Police Department, it is his duty to inform the Chief about issues or problems within the department, and he learned about the relationship as a result of his position as a police officer. In Williams v. Dallas Independent School District, 480 F.3d 689 (5th Cir.2007), the Fifth Circuit considered "the extent to which, under Garcetti, a public employee is protected by the First Amendment if his speech is not necessarily required by his job duties but nevertheless is related to his job duties." Williams, 480 F.3d at 693. In Williams, a high school athletic director and head football coach was removed after he sent two memoranda to the high school's office manager and principal questioning the handling of school athletic funds. After surveying pre- and post-Garcetti caselaw, the court concluded that the cases generally "distinguish between speech that is 'the kind of activity engaged in by citizens who do not work for the government' and activities undertaken in the course of performing

5

one's job." Id. at 693-94 (internal citation to Garcetti omitted). Stating that "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties," the Williams court then examined the content and circumstances of the memorandum to determine whether the plaintiff had drafted it in the course of performing his job. Id. at 693. Noting that the memoranda focused on the plaintiff's "daily operations," included accusations that the office manager's practices had "hurt [the plaintiff's] ability" to perform his job, and reflected "special knowledge" gained by the plaintiff as a result of his position, the Williams court held that the plaintiff had drafted the memo in the course of performing his job and thus "the speech contained therein is not protected by the First Amendment." Id. at 694. Notably, the Williams court emphasized that "[t]his is not a case where [the plaintiff] wrote to the local newspaper or school board with his athletic funding concerns." Id. at 694 n. 2 (citing Garcetti, 547 U.S. at 422). Accordingly, because the plaintiff was not speaking as a citizen, his speech is not entitled to First Amendment protection, and summary judgment should enter for Lt. Robbins.

    b.       **The plaintiff was not speaking about matters of public concern.**

The plaintiff did not inform the Chief about a matter of public concern. Rather, he defended himself from a complaint, and complained about his work environment. Whether an employee's speech addresses a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). The heart of the matter is whether the employee's speech was "calculated to redress personal grievances or whether it had a broader public purpose." Ruotolo, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163-

6

64 (2d Cir. 1999)).  When the speech in question "involves workplace grievances, or merely matters of personal interest," the employee is not afforded First Amendment protection.  Horne v. City of Boston, 509 F. Supp. 2d 97, 110 (D.Mass. 2007).

Here, the plaintiff informed the Chief about the relationship between Lt. Robbins and the Town Clerk in order to defend himself from a complaint made about his work performance at a paid police detail.  See Exhibit B.  He did not complain to the Chief with the interests or concerns of the public in mind; he complained because of personal interests and personal concerns. See Exhibit B. Indeed, he told that Chief that he wanted to keep things "in house." See Exhibit B. The fact that the plaintiff now claims that his comments to the Chief were matters of public concern is merely a tactical position taken only for the purpose of his lawsuit. See Jordan, 494 F. Supp. 2d at 78.

The complaints were made in his capacity as a police officer for the sole purpose of resolving internal police department grievances. Indeed, he told the Chief that he wanted to keep things "in house." See Exhibit B. He informed the Chief because the Town Clerk's presence in the station caused him "great anxiety." See Exhibit B. His complaints do not reflect any concern for the public, nor do they attempt to redress any issues other than the plaintiff's personal problems with Lt. Robbins and the Town Clerk.  In no way was his speech to the Chief offered "to provide members of society with information necessary to make informed decisions about government operations, to disclose public misconduct, or to inspire public debate on a matter of significant public interest." Meaney v. Dever, 326 F. 3d 283, 289 (1st Cir. 2003).

7

This case is similar to the case of Rosado –Quiñones v. Toledo, 528 F.3d (1st Cir.2008). In Rosado, the First Circuit held that the plaintiff police officer's complaints about harassment and animosity by his superior officers was not a matter of public concern.  The Court explained that this type of complaint was "a classic example of speech concerning internal working conditions affecting only the speaker and co-workers," and that it "does not even approach matters of public concern in the context of law enforcement, such as 'official malfeasance, abuse of office, and neglect of duties.'" Rosado –Quiñones, 528 F.3d at 5.  As a result, the Court declined to address the second and third prongs of the test. Nevertheless, should this Court hold that the plaintiff's complaint about his internal working conditions (Exhibit B) was a matter of public concern, the plaintiff cannot satisfy either the second or third prongs of the test, both of which will be addressed below.

Because the plaintiff's speech was not made as a citizen commenting on a matter of public concern he is not entitled to First Amendment protection, and judgment should be granted in favor of Lt. Robbins.

>  2. **Police superiors had adequate justification for treating the plaintiff differently from other members of the general public.**

Only after finding that an employee was speaking as a citizen and on a matter of public concern does the possibility of a First Amendment claim arise. Garcetti, 547 U.S. at 418.  The question then becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. Curran, 509 F.3d at 45 (citing Garcetti, at 418). Assuming, arguendo, that the plaintiff's speech touched on matters of public concern, and assuming evidence of an adverse employment

action, under the balancing test in Pickering v. Bd. of Educ., 391 U.S. 563 (1968), the plaintiff's case fails. Under Pickering, the court must balance the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Id. at 568.

If self-interest was the primary motivation for the speech, the expression is entitled to less weight than speech which is truly aimed at addressing public concerns. Mullin v. Town of Fairhaven, 284 F.3d 31, 39 (1st Cir.2002). Likewise, if a plaintiff is disciplined because the defendant is concerned that tolerance of his statements would negatively affect governmental functions, the defendant has "weighty interests on [its] side of the Pickering scale." Mihos v. Swift, 358 F.3d 91, 103 (1st Cir.2004). Finally, the First Amendment does not "require a public office to be run as a roundtable for employee complaints over internal office affairs." Connick, 461 U.S. at 149. Nor is it necessary "for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." Id. at 152.

Here, the Chief and Lt. Robbins have a strong interest in maintaining order and discipline among the department's officers, and this interest easily outweighs any potential interest of the plaintiff in defending himself from complaints made by the Town Clerk or in complaining about his work environment. The plaintiff made statements to the Chief purely out of self-interest. Indeed, when responding to the Town Clerk's complaint, he claimed that he was uncomfortable with his working environment because the Town Clerk would visit Lt. Robbins at work, and he had to "bob and weave" when answering the phone because two different women would call the station asking

9

for Lt. Robbins. See Exhibit B; Exhibit C, Answer No. 4. Further, the plaintiff negatively commented on Lt. Robbins's personal life, made disparaging remarks about the Town Clerk and Lt. Robbins, and questioned his superior officer's integrity. See Exhibit B.

This is not a case in which the plaintiff attempted to inform the public about serious safety issues or blow the whistle on any observed wrongdoing. Rather, he was responding to a complaint against him by disclosing personal feelings about his working conditions and other Town employees. See Exhibit B. Any limited First Amendment interest involved here would not require the Chief or Lt. Robbins to tolerate such behavior because it was reasonable for them to believe that the plaintiff's complaints would disrupt the office, undermine authority, or destroy close working relationships. See Jordan, 494 F.Supp.2d 80.

The First Circuit has explained that, in the realm of a law enforcement agency, the importance of discipline and harmony is greater than in other government entities. See Guilloty Perez v. Pierluisi, 339 F.3d 43, 53 (1st Cir.2003). "In quasi-military organizations such as law enforcement agencies, comments concerning co-workers' performance of their duties and superior officers' integrity can directly interfere with the confidentiality, esprit de corps, and efficient operation of the police department." See Jordan, 494 F.Supp.2d 80 citing Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir.1991) and Shands v. City of Kennett, 993 F.2d 1337, 1344 (8th Cir.1993) (police departments have a need to "promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence"). Accordingly, "courts must be sensitive to the needs of law enforcement agencies in disciplining an employee whose

expressive conduct interferes with these interests." Guilloty Perez, 339 F.3d at 53-54.

Accordingly, because the interests of the Reading Police Department outweigh the plaintiff's personal interests, judgment should be granted in favor of Lt. Robbins as a matter of law.

### 3. Any "protected speech" was not a substantial or motivating factor in any adverse employment action.

If the Court determines that the Pickering balance test favors the employee's First Amendment rights over the efficiency interests of the police department, the employee must then show that the "protected expression was a substantial or motivating factor" in an adverse employment decision. Guilloty Perez v. Pierluisi, 339 F.3d 51. If the employee makes an adequate showing on this point, the defendants must counter by proving by a preponderance of the evidence that the governmental agency would have taken the same action against the employee "even in the absence of the protected conduct." Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). If the employer cannot adduce evidence of an alternative justification for the employment action, or if that evidence, once adduced, does not suffice to prove the point, the employee has established a constitutional violation. Guilloty Perez v. Pierluisi, 339 F.3d 51.[2]

---

[2] As the First Circuit explains in Guilloty Perez v. Pierluisi, 339 F.3d 43, 58 (1st Cir.2003), the question of motivation can be resolved by the court on a summary judgment motion if the plaintiff's evidentiary showing is insufficient. See, e.g., Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 12-13 (1st Cir.2003) (resolving the Mt. Healthy question at the summary judgment stage); Lewis v. City of Boston, 321 F.3d 207, 220 (1st Cir.2003) (same). This determination is fact-bound. Wytrwal v. Saco Sch. Bd., 70 F.3d 165, 170 (1st Cir.1995). Although we are to "examine the evidence and all fair inferences in the light most favorable to the plaintiff," Katz v. City Metal Co., Inc., 87 F.3d 26, 28 (1st Cir.1996), the plaintiff who must prove that the protected conduct was a motivating factor in the adverse employment action must produce some facts linking that action to his conduct. See Rakovich v. Wade, 850 F.2d 1180, 1191 (7th Cir.1988) ("[I]n the directed verdict and judgment

The plaintiff cannot prove that he suffered an adverse employment action. As a result of his speech, the plaintiff was not suspended or reprimanded, and did not lose any wages or even miss a paid police detail. The plaintiff, however, speculates that he had a shot at being promoted to lieutenant in late 2008 or early 2009. See Exhibit D, p. 214-214. While the Supreme Court has noted that failure to promote may in some circumstances amount to an adverse employment action, the plaintiff still bears the burden of producing factual evidence to support a causal relationship between the comments made to the Chief and the Department's failure to promote him.

The plaintiff cannot adduce any facts to support that a causal relationship existed between the plaintiff's failure to make lieutenant and any actions by Lt. Robbins as a result of the April 2006 "protected speech." Indeed, the officer who was promoted instead of the plaintiff to the lieutenant position, Peter Garchinsky, received the same civil service score as the plaintiff and had three more years of seniority. See Exhibit D, p. 111-120. This is not a situation where the plaintiff was bypassed or more eligible than the officer who earned the promotion. Notably, Lt. Robbins was not involved in this promotional process. See Exhibit D, p. 117.

The plaintiff seems to allege that he received a critical evaluation in 2005-2006 by Lt. Robbins, which was motivated by the complaint the plaintiff made to the Chief. See Exhibit B, E and F. The plaintiff, however, only finds the evaluation to be subjective and the ratings to be average. See Exhibit D, p. 81-84; Exhibits E and F. And, when questioned about the accuracy of the his evaluation

---

notwithstanding the verdict contexts, evidence of some disagreement or dislike must be accompanied by evidence linking it to the injury. More than mere speculation must serve as the basis for finding that such disagreement is the 'motivating cause.'").

during deposition, the plaintiff stated he "disagree[s] with his [Lt. Robbins's] opinions and conclusions." See Exhibit D, p. 87.

Moreover, for years prior to his 2006 "protected speech" to the Chief, the plaintiff says that Lt. Robbins had created a climate that would make it very difficult for him to be promoted to lieutenant. Exhibit D, p. 122-123. The problems between he and Lt. Robbins began after a 1993 domestic call for which the plaintiff was suspended and Lt. Robbins was embarrassed. See Exhibit B; Exhibit D, p. 143-144, 152. The plaintiff says that these problems and friction have continued since 1993, and since that time Lt. Robbins has treated him unfairly and would treat him differently than officer officers. See Exhibit D, p. 167-176.

Finally, the plaintiff is far from being a model officer. As he admits, he has been suspended twice and reprimanded many times during his time at the Reading Police Department. See Exhibit D, p. 152-160. Neither of the plaintiff's suspensions for (1) abandoning his shift nor (2) conduct unbecoming an officer was related to Lt. Robbins. See Exhibit D, p. 153. Moreover, the plaintiff has had problems with his two previous Chiefs. See Exhibit D, p. 160-165.

Because the plaintiff cannot show a legitimate adverse action or any causal relationship between the alleged retaliation and the "protected speech," judgment should be granted in favor of Lt. Robbins as a matter of law.

### III.  CONCLUSION

For the foregoing reasons, Lt. Robbins respectfully requests that the Court enter summary judgment for him, and against the plaintiff on all counts and causes of action in the complaint.

Respectfully submitted,
Defendant, Town of Plymouth
By its attorneys,


/s/ *Thomas Donohue*
Leonard H. Kesten, BBO #542042
Thomas Donohue, BBO #643483
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100



**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants on November 2, 2009.


November 2, 2009   /s/ *Thomas R. Donohue*
_____
       Date         Thomas R. Donohue