UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: 08-11672-RGS

|  | ) |
|---|---|
| MARK O'BRIEN | ) |
|     Plaintiff | ) |
|  | ) |
| Vs. | ) |
|  | ) |
| RICHARD ROBBINS | ) |
|     Defendant | ) |
|  | ) |

## RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND EXHIBITS IN SUPPORT OF DEFENDANT RICHARD ROBBINS'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, the defendant, Richard Robbins, hereby submits and incorporates this statement of facts and supporting attachments. [1]

1. The plaintiff, Mark O'Brien, Esq. ("plaintiff"), a sergeant in the Reading Police Department, and licensed member of the Massachusetts bar, filed a one-count Complaint against the defendant, Richard Robbins ("Lt. Robbins"), a lieutenant in the Reading Police Department. See Exhibit A, Complaint, attached.

2. The Complainant alleges that Lt. Robbins violated the plaintiff's First Amendment right to free speech after the plaintiff complained to the Chief of Police about a romantic relationship between Lt. Robbins and the Town Clerk. See Exhibit A.

3. The plaintiff alleges his protected speech was made to the Chief of the Reading Police Department, James Cormier ("Chief"), on April 26, 2006. See Exhibit A, ¶ 8.

---

[1] The defendant agrees to this statement of material undisputed facts only for the purpose of summary judgment.

1

4. On April 7, 2006, the Chief called the plaintiff into his office because the Town Clerk had made a complaint about the plaintiff, and she requested that the plaintiff not be allowed to work the election poll detail anymore. See Exhibit B, Email from the plaintiff to Chief Cormier dated April 26, 2006, attached.

5. In response to the Clerk's complaint, the plaintiff informed the Chief that Lt. Robbins and the Town Clerk were having an ongoing romantic relationship for the past several years, and she is constantly inside the station while Lt. Robbins is working. See Exhibit B.

6. The plaintiff only complained to the Chief because the Town Clerk had complained to him about his performance at the election poll detail on April 4, 2006. See Exhibit C, Answer No. 6, Plaintiff's Answers to Interrogatories, attached; Exhibit D, p. 50, Plaintiff's Deposition Transcript, attached.

7. When the Chief confronted the plaintiff about the Town Clerk's allegations, the plaintiff informed the Chief about the relationship in order to defend himself against her allegations. See Exhibit C, Answer No. 6; Exhibit D, p. 50.

8. The plaintiff advised the Chief that a reasonable person could infer that the relationship between Lt. Robbins and the Town Clerk was more than plutonic. See Exhibit B.

9. The Town Clerk's presence in the police station caused the plaintiff great anxiety because Lt. Robbins lived with another woman. See Exhibit B; Exhibit C, Answer No. 4.

10. Both women would call into the station and the plaintiff would sometimes have to "bob and weave" until he could ascertain their identity. See Exhibit B; Exhibit C, Answer No. 4.

11. The plaintiff also informed the Chief that he knows things about the Town Clerk's previous relationships that "might be construed as offensive to future suitors if it became known." See Exhibit B.

12. In response to the Town Clerk's complaint, the plaintiff told that Chief that he believes that the Town Clerk is trying to hurt his reputation out of fear that he might embarrass her. See Exhibit B.

13. The plaintiff also told the Chief that he believes the Town Clerk made the complaint to keep him from interfering with the ongoing relationship. See Exhibit B.

14. The plaintiff shared his opinion that Lt. Robbins made the complainant through the Town Clerk, in part, because promotional exams were coming soon. See Exhibit B.

15. The plaintiff told the Chief that he is "OLD SCHOOL" and wanted to keep things "in house." See Exhibit B. See Exhibit D, p. 54, 57-58.

16. His only request was that the Town Clerk not come into the station while he is working. See Exhibit B. See Exhibit D, p. 54, 57-58.

17. In reporting the relationship to the Chief, the plaintiff made every effort to keep all correspondence only between himself and the Chief, so that the Chief could resolve the matter. See Exhibit B; Exhibit D, p. 54, 57-58.

18. The plaintiff did not want the situation to go outside the police station. See Exhibit B; Exhibit D, p. 54, 57-58.

19. "I was trying to keep it between me and the Chief." See Exhibit D, p. 21.

20. The plaintiff informed the Chief about the relationship so that the Chief could decide what to do with his own police personnel; so that the Chief could run his department. See Exhibit D, p. 28, 54, 57-58, 216-217.

21. The plaintiff did not want to make this relationship public, and it was already public. See Exhibit D, p. 216-218.

22. The plaintiff informed the Chief about the relationship "one cop to another," and, in part, did it to protect himself. See Exhibit D, p. 54, 57-58. 216-217.

23. The plaintiff informed that Chief about the relationship because the Town Clerk had made a complaint against him, and because it was the right thing to do. See Exhibit D, p. 29-30.

24. The Town Clerk's complaint forced the plaintiff to inform the Chief about the relationship. See Exhibit D, p. 50.

25. Prior to the plaintiff defending himself, the Chief and everybody already knew about the relationship. It was a matter of public knowledge. See Exhibit D, p. 29-30.

26. At his deposition, the plaintiff claimed that his report to the Chief regarding the relationship between the Town Clerk and Lt. Robbins was a matter of public concern. See Exhibit D, p. 61-62.

27. On April 7, 2006, the Town Clerk came to the police station and walked past the plaintiff's office but did not acknowledge him. She and Lt. Robbins went to the kitchen. This caused the plaintiff tremendous stress so he "went home sick." See Exhibit B.

28. On April 25, 2006, the Town Clerk again visited the police station for 3-4 minutes and waived as she walked past the plaintiff's office. This caused the plaintiff tremendous stress and his heart began to race. See Exhibit B.

29. Problems began between the plaintiff and Lt. Robbins due to a 1993 domestic call. See Exhibit B; Exhibit D, p. 143-144, 152.

30. As a result of the plaintiff's actions, the former Chief reprimanded the plaintiff. Nevertheless, the plaintiff believes the situation caused Lt. Robbins embarrassment. See Exhibit B; Exhibit D, p. 143-144, 152.

31. In reference to Lt. Robbins's relationship to with the Town Clerk or his evaluation, the plaintiff informed the Chief that his children are his most precious commodity and his wife is his soul mate. See Exhibit F, the plaintiff's rebuttal to his 2005-2006 employee evaluation, attached.

32. The plaintiff now sleeps with a gun next to his bed, and fights with his wife and is distant with his kids. See Exhibit D, p. 221-222.

33. The plaintiff claims that Lt. Robbins retaliated against him for providing information to the Chief about the relationship. See Exhibit D, p. 61-62; Complaint.

34. The plaintiff did not lose any wages and never missed a paid police detail. See Exhibit D, p. 214-215.

35. The plaintiff seems to speculate that Lt. Robbins's actions interfered with his chance of promotion to lieutenant. See Exhibit D, p. 109-113.

36. The plaintiff, however, is unable to provide a causal connection between his "protected speech," any actions by Lt. Robbins, and his not being promoted to lieutenant. See Exhibit D, 109-121.

37. According to the plaintiff, Lt. Robbins has not liked the plaintiff since 1993. See Exhibit D, p. 174.

38. For years prior to his "protected speech" to the Chief, the plaintiff says that Lt. Robbins had created a climate that would make it very difficult for him to be promoted to lieutenant. Exhibit D, p. 122-123.

39. The plaintiff claims that he should have been promoted to lieutenant over then Sgt. Peter Garchinsky even though both sergeants had the same civil service score and Sgt. Garchinsky (now lieutenant) has three more years of seniority. See Exhibit D, p. 111-120.

40. Lt. Robbins was not involved in the promotional process. See Exhibit D, p. 117-118.

41. Interviews were conducted by the Town Manager, the Chief of Police and Carol Roberts, who has personnel responsibilities. See Exhibit D, p. 117-118.

42. On June 26, 2006, the plaintiff received an employee employment evaluation by Lt. Robbins. See Exhibit E, Town of Reading, Employee Performance Evaluation, attached hereto.

43. The plaintiff seems to allege that Lt. Robbins's assessment that the plaintiff "needs improvement" in "supervisory capability" was motivated by his complaint to the Chief in April 2006. See Exhibits E and F.

44. However, in 2001, five years before his "protected speech," the plaintiff received the same "needs improvement" assessment in "supervisory capability" from Lt. Robbins. See Exhibit G, Town of Reading, Employee Performance Evaluation, for the plaintiff, by Lt. Robbins, attached hereto.

45. The plaintiff says that problems began between the plaintiff and Lt. Robbins due to a 1993 domestic call for which the plaintiff was suspended, and Lt. Robbins was embarrassed. See Exhibit B and Exhibit D, p. 143-144, 152.

46. Since 1993 the problems between the plaintiff and Lt. Robbins have continued. See Exhibit D, p. 167-173.

47. Since 1993 the plaintiff alleges that Lt. Robbins has treated him unfairly. See Exhibit D, p. 173.

48. For years prior to his "protected speech" Lt. Robbins treated the plaintiff differently than other officers. See Exhibit D, p. 173-174.

49. For years prior to 2006 there has been friction between Lt. Robbins and the plaintiff. See Exhibit D, p. 173-174.

50. Beginning in 1993, Lt. Robbins would "nickel and dime" the plaintiff, and would scrutinize him more closely than other officers. See Exhibit D, p. 174-176.

51. The plaintiff responded "I disagree with his opinions and conclusions," when asked "Is it fair to say that three's nothing factually inaccurate [in the evaluation], you just don't agree with [Lt. Robbins's] opinions and conclusions?" See Exhibit D, p. 87.

52. For years prior to his April 2006 complaint the plaintiff has been disagreeing with his evaluations by Lt. Robbins. See Exhibit D, p.76.

53. The plaintiff finds his evaluation to be subjective and the ratings to be average. See Exhibit D, p. 81-84.

54. The plaintiff has been suspended twice and reprimanded many times during his time at the Reading Police Department. See Exhibit D, p. 152-160.

55. Neither of plaintiff's suspensions for (1) abandoning his shift or (2) conduct unbecoming an officer was related to Lt. Robbins. See Exhibit D, p. 153.

56. During his time at the Reading Police Department, the plaintiff has worked under three Chiefs of Police. See Exhibit D, p. 160.

57. The plaintiff "butted heads" with his first chief, Eddie Marchand. See Exhibit D, p. 160-163.

58. The plaintiff's second chief, Robert Silva, did not like the plaintiff. See Exhibit D, p. 163-165.

59. The plaintiff wishes he was closer to the current chief, James Cormier, but the plaintiff likes him. See Exhibit D, p. 165-166.

60. In response to his evaluation, the plaintiff wrote a rebuttal dated June 26, 2006. See Exhibit F.

Respectfully submitted,
The Defendant, Richard Robbins
By his attorneys,
BRODY, HARDOON, PERKINS & KESTEN, LLP

/s/ *Thomas Donohue*
Leonard H. Kesten, BBO # 542042
Thomas R. Donohue, BBO# 643483
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants on November 2, 2009.

November 2, 2009    /s/ *Thomas R. Donohue*
_____
        Date        Thomas R. Donohue